IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT S. MILLER, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Defendant | : | NO. 08-4838 |

**REPORT AND RECOMMENDATION**

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

This action was brought pursuant to 42 U.S.C. § 405(g) seeking judicial

review of the final decision of the Commissioner of the Social Security Administration

("Commissioner"), who denied the applications of Robert S. Miller for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act ("Act").  Presently before this court are

the plaintiff's request for review and the defendant's response to request for review.  For the

reasons set forth below, this court recommends that plaintiff's request for review be granted in

part and denied in part.

I.       FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a forty-six (46) year-old man born on August 15, 1962.  (Tr.

21).  Plaintiff has a high school equivalent education.  (Tr. 21, 338).  In the past, plaintiff served

in the United States Army and worked in construction.  (Tr. 21, 338).  Plaintiff has one child,

who is over the age of eighteen.  (Tr. 337).  Plaintiff resides with his girlfriend.  (Tr. 338).

1

On April 8, 2005, plaintiff filed an application for disability insurance benefits.  (Tr. 16).  In his application, plaintiff alleged a disability onset date of October 4, 2004.  (Tr. 16).  Plaintiff alleges that he is disabled due to injuries sustained in multiple motor vehicle accidents.  (Tr. 60-61).  Specifically, plaintiff claims to have several broken ribs, and back, neck, and knee pain.  (Tr. 60-61).  Plaintiff's application for benefits was denied on August 3, 2005.  (Tr. 16).  Thereafter, plaintiff requested a hearing before an Administrate Law Judge ("ALJ").  (Tr. 35-36).

A hearing was held before ALJ George C. Yatron on February 28, 2007.  (Tr. 39-42).  Plaintiff appeared *pro se* and testified before the ALJ.  (Tr. 334-49).  In a decision dated March 26, 2007, ALJ Yatron granted disability benefits for the closed period of October 4, 2004, through December 6, 2005.  (Tr. 13-26).  The ALJ concluded that plaintiff's disability ended on December 7, 2005.  (Tr. 22).  The ALJ found that plaintiff's severe impairments were late effects of musculoskeletal injuries and diabetes.  (Tr. 20).  The ALJ further determined that, beginning on December 7, 2005,  plaintiff has had the residual functional capacity to lift and carry at least 50 pounds occasionally and 20 pounds frequently; stand/walk for 6 hours and sit for 6 hours during an 8 hour workday; and has no exertional or non-exertional functional limitations.  (Tr. 23).  The ALJ concluded that plaintiff cannot perform past relevant work but can perform a full range of medium work.  (Tr. 23, 25).

The ALJ's decision became the final decision of the Commissioner when, on August 6, 2008, the Appeals Council denied plaintiff's request for review.  (Tr. 4-6).  Presently, plaintiff has appealed that decision to this court.

2

II.           LEGAL STANDARDS

A.     Standard of Review

The role of this court, on judicial review of a final decision of the Commissioner of Social Security, is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Pierce v. Underwood, 487 U.S. 552 (1988). "Substantial evidence" is not "a large or considerable amount of evidence, 'but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. at 564-65, quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). If substantial evidence of record exists, "the Court is bound by the ALJ's findings of fact...." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

B.     Establishing Disability Under the Social Security Act

To establish a disability under the Social Security Act, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." Heckler v. Campbell, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(1)(A). The claimant must further prove that the impairment prevents him from engaging in "substantial gainful activity" for a period of twelve months. Stunkard v. Sec'y of Health and Human Serv., 841 F.2d 57, 59 (3d Cir. 1988), quoting Kangas, 823 F.2d at 777.

3

To satisfy his burden, the claimant must show an inability to return to his past relevant work.

Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir.

1979), citing Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966).  Once claimant satisfies his burden,

the burden of proof shifts to the Commissioner to show that the claimant, given his age,

education, and work experience, has the ability to perform specific jobs that exist in the

economy.  Rossi, 602 F.2d at 57; 20 C.F.R. §  404.1520.

> As explained in the following agency regulation, each case is evaluated by

the Commissioner according to a five-step process:

> (i)  At the first step, we consider your work activity if any.  If you are
> doing substantial gainful activity, we will find that you are not disabled.
> (ii) At the second step, we consider the medical severity of your
> impairment(s).  If you do not have a severe medically determinable
> physical or mental impairment that meets the duration requirement in
> § 404.1509, or a combination of impairments that is severe and meets the
> duration requirement, we will find that you are not disabled.
> (iii)  At the third step, we also consider the medical severity of your
> impairment(s).  If you have an impairment(s) that meets or equals one
> of our listings in appendix 1 of this subpart and meets the duration
> requirement, we will find that you are disabled.  (iv).  At the fourth step,
> we consider our assessment of your residual functional capacity and
> your past relevant work.  If you can still do your past relevant work,
> we will find that you are not disabled.  (v).  At the fifth and last step,
> we consider our assessment of your residual functional capacity and
> your age, education and work experience to see if you can make an
> adjustment to other work.  If you can make an adjustment to other work,
> we will find that you are not disabled.  If you cannot make an adjustment
> to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.     ADMINISTRATIVE LAW JUDGE'S DECISION

> Using the above-mentioned sequential evaluation process, the ALJ

determined that plaintiff has been under a "disability," as defined in the Social Security Act, from

4

October 4, 2004, plaintiff's alleged onset date, through December 6, 2005.  (Tr. 22).  The ALJ

determined, however, that plaintiff's disability ended as of December 7, 2005.  (Tr. 22).  At step

one, the ALJ determined that the plaintiff has not engaged in substantial gainful activity since

plaintiff's alleged disability onset date of October 4, 2004.  (Tr. 20).  At step two, the ALJ found

that plaintiff suffers from the following impairments: late effects of musculoskeletal injuries and

diabetes.  (Tr. 20).  In making this determination, the ALJ relied upon the following summarized

medical records:

Plaintiff has received regular medical care at the Philadelphia VA Medical

Center.  (Tr. 162-227).  From April through October 2004, plaintiff was treated for diabetes and

was prescribed medications therefor.  (Tr. 193-221).  In October 2004, Dr. Harold Gever, M.D.,

treated plaintiff for injuries sustained in a motor vehicle accident.  (Tr. 190-92).  Dr. Gever

diagnosed plaintiff with whiplash injury and drafted a letter restricting plaintiff to "light duty" for

four weeks.  (Tr. 190-92).  In November 2004, plaintiff presented to Dr. Gever with neck pain.

(Tr. 186).  Dr. Gever reported some cervical sprain/strain and prescribed pain medication as

needed.  (Tr. 188).

Plaintiff was treated at Dublin Medical Center on November 26, 2004, and

December 8, 2004, for injuries, namely back, leg, and knee pain, sustained in a motor vehicle

accident.  (Tr. 99-99A).  Plaintiff was prescribed pain medications, was referred to a

chiropractor, and was advised to continue "light duty at work."  (Tr. 99-99A).

On December 20, 2004, Dr. Gever again treated plaintiff for complaints of

neck pain originating from the October 2004 motor vehicle accident.  (Tr. 182).  Plaintiff

reported that he had recently been in another motor vehicle accident and was about to begin a

course of physical therapy for his injuries.  (Tr. 182).  Dr. Gever diagnosed plaintiff with acute cervical sprain/strain and advised plaintiff to take pain medication as needed.  (Tr. 184).

On December 24, 2004, plaintiff presented to the emergency room at Westchester Medical Center with injuries sustained in another automobile accident.  (Tr. 101, 105-09).  Dr. Francis Baccay, M.D., treated plaitniff for rib fractures, liver laceration, loss of consciousness, and diabetes.  (Tr. 103-13).  Dr. Baccay's records also indicate that plaintiff underwent an emergency procedure involving the placement of an inferior vena cava filter to prevent possible pulmonary embolism.  (Tr. 129).  Plaintiff was released on January 6, 2005, with prescription medications and instructions to avoid heavy lifting and strenuous activities.  (Tr. 103).

On January 20, 2005, Dr. Gever again treated plaintiff for complaints of pain.  (Tr. 179).  Plaintiff reported having been in an automobile accident at the end of December for which he was treated at Westchester Medical Center.  (Tr. 179).  Plaintiff informed Dr. Gever that the accident resulted in numerous injuries including: cerebral concussion, rib fractures, pulmonary contusions, and liver laceration.  (Tr. 179).  Dr. Gever reported that plaintiff's acute cervical sprain/strain was healed.  (Tr. 181).  Dr. Gever also indicated that plaintiff should take pain medication daily as needed for his rib fractures.  (Tr. 181).  With respect to plaintiff's concussion, Dr. Gever noted that plaintiff was alert and that there was no reason why plaintiff could not drive at that point.  (Tr. 181).  In February 2005, Dr. Gever again treated plaintiff for neck pain.  (Tr. 175).  Plaintiff also reported having chest and back pain.  (Tr. 175).  Dr. Gever indicated that plaintiff's rib fractures had not yet healed and that plaintiff had spurs in his right elbow.  (Tr. 177).

In March 2005, Dr. Gever again treated plaintiff for complaints of pain. (Tr. 170). Dr. Gever noted that plaintiff reported having improvement with his pains. (Tr. 170). Dr. Gever indicated that he would order CT scans of the brain, chest and abdomen. (Tr. 172). In April 2005, Dr. Gever reported to plaintiff that he did not find significant findings in the chest or abdomen. (Tr. 168). Also in April, plaintiff again saw Dr. Gever and reported continuing to have improvement with pain. (Tr. 165). Plaintiff, however, reported ongoing right shoulder pain and discomfort of the lower chest and right knee. (Tr. 165). The following month, plaintiff presented to the Philadelphia VA Medical Clinic with complaints of pain in the right hand. (Tr. 164).

The record also contains a Residual Functional Capacity Assessment completed by state agency physician, Dr. Mary Ryczak, on July 25, 2005. (Tr. 228-35). The form indicates that the assessment is for December 24, 2005, a date 12 months after the alleged disability onset date. (Tr. 228). Dr. Ryczak's primary diagnoses are injuries related to the December 24, 2004, motor vehicle accident, namely rib fractures, right elbow pain, and concussion. (Tr. 228). As to plaintiff's exertional limitations, Dr. Ryczak opined that, as of December 24, 2005, plaintiff would be able to occasionally lift/carry a maximum of 50 pounds; frequently lift/carry a maximum of 25 pounds; stand and/or walk for a total of 6 hours in an 8-hour work day; sit for a total of 6 hours in an 8-hour workday; and unlimited push/pull capabilities. (Tr. 229). Dr. Ryczak explained that she based her opinion on plaintiff's allegations of broken ribs, back and neck pain, as well as his history of motor vehicle accidents. (Tr. 229). Dr. Ryczak did not identify any postural, manipulative, visual, communicative, or environmental limitations. (Tr. 230-33). As to the severity of plaintiff's symptoms, Dr. Ryczak

indicated that she found plaintiff partially credible.  (Tr. 233).   She further indicated that plaintiff

reported that he is able to drive, that he can lift 15-25 pounds, that he can walk on level ground,

and that plaintiff uses oxycodone for pain relief.  (Tr. 233).

       The record further contains a Psychiatric Review Technique form

completed by Dr. J.J. Kowalksi, M.D., on August 2, 2005, which assessed plaintiff's psychiatric

condition at that time.  (Tr. 236-49).   Dr. Kowalksi opined that plaintiff has no medically

determinable mental impairment but has a coexisting nonmental impairment.  (Tr. 236).  Dr.

Kowalksi noted that plaintiff's activities of daily living are affected by physical problems and

pain.  (Tr. 248).  Dr. Kowalksi further indicated that plaintiff gets along with people, understands

instructions and completes activities.  (Tr. 248).

       Beginning in August 2005, plaintiff presented to Dr. Teresa Gohen, a

chiropracter, with complaints of back pain, right shoulder pain, and chest pain related to broken

ribs.  (Tr. 277).  Plaintiff reported that his pain was due to injuries sustained in the December 24,

2004, motor vehicle accident.  (Tr. 277).  At that time, Dr. Gohen recommended that plaintiff be

treated three times each week for 12-16 weeks, using light manual therapies.  (Tr. 279-80).   Dr.

Gohen also advised plaintiff to avoid and restrict all activities involving lifting.  (Tr. 279). Dr.

Gohen further advised plaintiff to apply cold, hot, cold compresses to his chest and back to

relieve pain.  (Tr. 279).  At that time, plaintiff indicated that he had a prescription for Percocet

but tried to use it sparingly.  (Tr. 279).

       Plaintiff was treated by Dr. Gohen with a course of chiropractic treatment

through the beginning of December 2005.  (Tr. 269).  At various times throughout treatment,

plaintiff reported pain in his shoulder, rib cage, and back.  (Tr. 262-76).  Plaintiff also reported

feeling some improvement in his back.  (Tr. 270, 273-76).  By the end of September 2005, Dr.

Gohen reported that improvement was seen using manual therapies, electrical stimulation, and

spinal adjustments.  (Tr. 272).    Dr. Gohen further indicated that improvement to date was

"satisfactory."  (Tr. 272).  Also at that time, plaintiff reported feeling better, but added that he

was not doing any work.  (Tr. 271).  In October 2005, Dr. Gohen re-evaluated plaintiff and

reported that pain was reduced in the spine and ribs, but that plaintiff's shoulder pain was less

responsive to treatment.  (Tr. 269).  Dr. Gohen recommended stretching and strengthening

exercises and reduced treatment to twice weekly.  (Tr. 269).  Also in October 2005, plaintiff

returned to Dr. Gever for evaluation of his injuries.  (Tr. 303).  Plaintiff complained of burning in

his chest.  (Tr. 303).  Dr. Gever reported that plaintiff's rib fractures were still healing but that

plaintiff should continue taking Percocet as needed.  (Tr. 306).  Dr. Gevera also injected

plaintiff's shoulder with a steroid.  (Tr. 306).

Plaintiff continued treatment with Dr. Gohen through December 2005,

with manual therapies, spinal adjustments, and exercises.  (Tr. 262-67).  On December 7, 2005,

Dr. Gohen made a "final examination" of plaintiff.  (Tr. 262).  Dr. Gohen indicated that plaintiff

experienced less pain in the thoracic spine since August, but that there was still tenderness and

pain in that area.  (Tr. 262).  Dr. Gohen further indicated that pain felt in plaintiff's rib cage was

less but could be exacerbated by twisting, light lifting, and everyday activities.  (Tr. 262).  Dr.

Gohen also reported that plaintiff has "improved over the course of treatment" but does "limit

and guard his activities to a large degree."  (Tr. 262).  Dr. Gohen noted that plaintiff cannot

return to his previous work as a carpenter.  (Tr. 262).

In April 2006, plaintiff presented to Dr. Gever with complaints of

9

discomfort in the rib cage and right shoulder. (Tr. 293). Dr. Gever advised plaintiff to take Percocet for pain as needed or manage with Tylenol and non-steroidal anti-inflammatories. (Tr. 295). Dr. Gevera also injected plaintiff's right shoulder with a steroid. (Tr. 295).

In May 2006, plaintiff again presented to Dr. Gohen with complaints of strong pain in the thoracic spine, rib cage, and right shoulder. (Tr. 257). Dr. Gohen treated plaintiff with manual therapies, spinal adjustments, and advised cold, hot, cold compresses to the affected areas. (Tr. 257). Plaintiff returned to Dr. Gohen several times each week in May 2006, and, by June 2006, plaintiff reported feeling less pain in general. (Tr. 253). However, plaintiff felt increased pain of the ribs with twisting and any lifting. (Tr. 253). Dr. Gohen indicated that plaintiff's range of motion was improved but that pain was exacerbated by flexion. (Tr. 253). Dr. Gohen also reported that plaintiff had two herniated discs. (Tr. 252). As to plaintiff's activities, Dr. Gohen advised plaintiff to "guard all activities and spread them out over a few days especially yard and household chores." (Tr. 253).

Also in June 2006, Dr. Gever renewed plaintiff's prescription for Percocet. (Tr. 292). Dr. Gever, however, reduced the amount of pills prescribed. (Tr. 292).

Continuing with the five step analysis, the ALJ moved on step three. At step three, the ALJ found that for the period of October 4, 2004, through December 6, 2005, plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. 404, Subpart P, Appendix I of the Regulations. (Tr. 20). The ALJ provided reasons for not finding plaintiff's impairments to meet the Listings. (Tr. 20).

At step four, the ALJ found that, from October 4, 2004, through December

6, 2005, plaintiff had the residual functional capacity to lift/carry no more than 10 pounds occasionally; sit for 6 hours; and stand/walk for 1 hour in an 8-hour workday.  (Tr. 20).  The ALJ further found that plaintiff was restricted by his inability to maintain regular attendance or perform basic work activities.  (Tr. 20).  Thus, the ALJ explained, plaintiff was unable to perform even sedentary work on a regular basis.  (Tr. 20).  The ALJ further explained that he found plaintiff's statements concerning the severity of his symptoms to be credible.  (Tr. 21).  The ALJ then cited plaintiff's testimony about his pain and limitations and medical records detailing plaintiff's injuries and treatments.  (Tr. 21).  The ALJ added, however, that he accorded only limited weight to the opinion of a state agency physician, as the state agency physician was non-treating and non-examining and did not consider plaintiff's subjective complaints for the period of October 2004 through December 6, 2005.  (Tr. 21).

          At step five, the ALJ explained that, on account of plaintiff's residual functional capacity for the period October 4, 2004, through December 6, 2005, plaintiff was unable to perform past work in construction.  (Tr. 21).   The ALJ further explained that plaintiff's work in construction occasionally required him to lift 100 pounds, but that for the relevant period, plaintiff was only able to lift more than 10 pounds occasionally.  (Tr. 21).  The ALJ also indicated that plaintiff's job skills did not transfer to other occupations within plaintiff's residual functional capacity for the period of October 4, 2004, through December 5, 2005.  (Tr. 21). Thus, the ALJ concluded that because plaintiff could not make a successful adjustment to other work for the period of October 4, 2004, through December 5, 2005, plaintiff was "disabled," as defined by the Social Security Act.  (Tr. 22).

          As indicated above, the ALJ found that plaintiff was disabled for a closed

11

period.  Accordingly, the ALJ then addressed plaintiff's allegations of disability for the period of

December 7, 2005, and thereafter.  The ALJ determined that plaintiff's condition improved as of

December 7, 2005.  (Tr. 22).  The ALJ referenced medical records dated December 7, 2005,

which indicated that plaintiff's pain was significantly reduced.  (Tr. 22).  The relevant medical

records also reported that plaintiff had only a slight diminution in range of motion, that

orthopedic test results were negative for lumbar disc involvement, and that plaintiff's deep

tendon reflexes were equal and active bilaterally.  (Tr. 23).

> The ALJ then explained that, for the period December 7, 2005, and
thereafter, plaintiff did not have an impairment or combination of impairments that met or
medically equaled the impairments listed in 20 C.F.R. 404, Subpart P, Appendix I of the
Regulations.  (Tr. 23).  The ALJ further explained plaintiff did not exhibit symptoms or objective
defects necessary to satisfy the Listings.  (Tr. 23).

> The ALJ next discussed his findings as to plaintiff's residual functional
capacity for the relevant period.  (Tr. 23).  The ALJ determined that, since December 7, 2005,
plaintiff has had the residual functional capacity to lift/carry at least 50 pounds occasionally;
lift/carry 20 pounds frequently; stand/walk for 6 hours in an 8-hour workday; and sit for 6 hours
in an 8-hour workday.  (Tr. 23).  The ALJ further determined that plaintiff has no other exertional
or non-exertional functional limitations.  (Tr. 23).  Accordingly, the ALJ found plaintiff capable
of performing a full range of medium work.  (Tr. 23).

> While the ALJ found that plaintiff's impairments could be expected to
produce the alleged symptoms, the ALJ did not find plaintiff fully credible as to the severity and
limiting effects of symptoms for the period December 7, 2005, and thereafter.  (Tr. 24).  The ALJ

specifically noted that plaintiff's allegations were undermined by the medical record, lack of significant treatment, and activities of daily living.  (Tr. 24).

With respect to the medical record, the ALJ explained that objective findings do not support plaintiff's claims of disability.  (Tr. 23).  In particular, the ALJ referenced lab studies with results in normal limits.  (Tr. 23).  The ALJ also explained that on examinations after December 7, 2005, plaintiff demonstrated only slight diminution in range of motion and that the his examinations were "unremarkable." (Tr. 23).  The ALJ further explained that, in February 2006, plaintiff's treating physician would not renew plaintiff's prescription for narcotic medication as plaintiff had expressed only minimal discomfort.  (Tr. 23).

With respect to treatment, the ALJ noted that plaintiff has received only "routine episodic treatment" by his primary care physician and a short course of chiropractic treatment after December 7, 2005.  (Tr. 24).  The ALJ explained that he finds it difficult to accept that plaintiff's condition is disabling if plaintiff is not motivated to seek more frequent treatment for his symptoms.  (Tr. 24).

As to plaintiff's activities of daily living, the ALJ explained that plaintiff has the ability to engage in "basically unrestricted activities of daily living."  (Tr. 25).  The ALJ further explained that plaintiff reported being able to do household chores, some yard work, and shopping.  (Tr. 24).  Lastly, the ALJ indicated that he accorded significant weight to the state agency doctor's opinion that plaintiff could perform medium exertional work.  (Tr. 25).

In consideration of plaintiff's residual functional capacity for the period beginning December 7, 2005, the ALJ determined that plaintiff was unable to meet the physical demands of his past work in construction.  (Tr. 25).  The ALJ determined, however, that given

13

plaintiff's age, education, work experience, and residual functional capacity to perform a full range of medium work, plaintiff has been able to perform jobs that exist in the national economy. (Tr. 25).  Accordingly, the ALJ found that plaintiff's disability ended on December 7, 2005.  (Tr. 25).

IV.          PLAINTIFF'S CONTENTIONS

Plaintiff alleges three main errors to the ALJ's decision: (1) the ALJ erred in proceeding with the hearing as plaintiff did not knowingly and voluntarily waive his right to counsel; (2) the ALJ failed to discharge his duty to adequately develop the record; and (3) the ALJ failed to demonstrate that medical improvement had occurred sufficient to terminate plaintiff's period of disability.

V.           DISCUSSION

The ALJ's findings must be affirmed if they are supported by substantial evidence.  42 U.S.C. § 405(g); Richardson, 402 U.S. at 401.   The role of this court is to determine whether there is substantial evidence to support the ALJ's decision.  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294 (1993). In coming to a decision, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence.  See Richardson, 402 U.S. at 399.

In the instant case, the ALJ found that the medical evidence establishes that plaintiff suffers from severe impairments of late musculoskeletal injuries and diabetes.  (Tr. 20).  The ALJ also found that, in light of plaintiff's residual functional capacity for the period October 4, 2004, through December 6, 2005, plaintiff was disabled.  (Tr. 22).  Nevertheless, the

14

ALJ determined that, for the period beginning December 7, 2005, plaintiff has had the residual functional capacity to perform a full range of medium work. (Tr. 23). Specifically, the ALJ found that plaintiff could lift/carry at least 50 pounds occasionally; lift/carry 20 pounds frequently; stand/walk for 6 hours; and sit for 6 hour hours in an 8-hour workday. (Tr. 23). Accordingly, the ALJ did not find plaintiff disabled for the period beginning December 7, 2005. (Tr. 25).

After a review of the record, this court finds that plaintiff's request for review should be granted in part and denied in part. This court also recommends that this case be remanded for further proceedings consistent with this Report and Recommendation.

A.          Right to Representation and Effective Waiver

Plaintiff argues that his waiver of representation at the hearing was neither knowing nor voluntary. More specifically, plaintiff claims that the ALJ did not ensure that plaintiff understood the consequences of proceeding without a representative nor that plaintiff was capable of making an informed choice. Plaintiff also argues that the ALJ was obliged to explain the availability of free legal representation, and failed to do so. Moreover, plaintiff claims that the ALJ should have informed plaintiff that he had the right to postpone the hearing.

We find unpersuasive plaintiff's claim that he did not effectively waive his right to representation and that the ALJ encouraged him to proceed unrepresented. Prior to the hearing, plaintiff was informed several times that he had the right to have a representation at the hearing. The record in this case contains a copy of the letter dated August 3, 2005, denying plaintiff disability benefits. (Tr. 29-32). The letter addresses the appeals process and contains a section entitled "If You Want Help With Your Appeal." (Tr. 32). The letter then explains that

the claimant has the right to assistance at the hearing, whether it be a friend or a lawyer.   (Tr.

32).  The letter further states that there are free legal services, that some lawyers do not charge

unless the claimant wins on appeal, and that the Social Security office has a list of groups who

can help with the appeal process.  (Tr. 32).

          Plaintiff was further informed of his right to have representation on appeal.

Upon receiving plaintiff's request for review, the Commissioner sent plaintiff a letter informing

him of the hearing process and the ways in which to prepare for the hearing.  (Tr. 35).  The letter,

also a part of the record, is dated September 24, 2005, and includes a section entitled "Your

Right to Representation."  (Tr. 35).  The letter briefly addresses the various types of

representation and indicates that a leaflet has been enclosed containing contact information of

groups that assist in finding a representative.  (Tr. 35).  Also attached to the letter was a

document containing information for finding a private attorney and free legal representation. (Tr.

37).  Plaintiff acknowledges that this letter, with "detailed information" about representation, was

sent to plaintiff, but plaintiff takes issue that it was sent a year and a half before the hearing.  This

court finds no merit to plaintiff's assertion concerning the time frame of the notice, as plaintiff

was given notice of his right to representation well in advance of his hearing, and was afforded

time to seek representation if he so chose.

          On December 8, 2006, plaintiff received a Notice of Hearing from the

Commissioner.  (Tr. 39).  This letter included a section entitled "You May Choose To Have A

Person Represent You."  (Tr. 40).   On December 18, 2006, plaintiff signed a form

acknowledging that he received the notice of hearing.  (Tr. 44).

          Furthermore, in his introductory remarks at the hearing on February 28,

2007, the ALJ specifically addressed plaintiff's right to counsel:

> ALJ: Did you receive the hearing acknowledgment letter and its enclosures–
>
> CLMT: Uh-huh.
>
> ALJ: to appear here today?
>
> CLMT: Yes, sir.
>
> ALJ: Do you understand the information contained in that letter concerning representation?
>
> CLMT: Yes, sir.
>
> ALJ: It's my understanding that you wish to proceed without a representative.  Is that correct?
>
> CLMT: Yes, sir.
>
> (Tr. 336).

A similar colloqy was reviewed by the Third Circuit in <u>Phifer v. Commissioner</u>, 2003 WL 22995206, at *191 (3d Cir. Dec. 22, 2003):

> In your notice of hearing, you were advised if you wanted to be, you could be represented by an attorney or some other qualified person of your choice, and, since you appeared without an attorney or a qualified representative, I assume you want to proceed with the hearing without an attorney or a qualified representative?

Prior to the hearing and the ALJ's remarks about representation, the plaintiff had been the informed numerous times in writing of his right to counsel.  In consideration of the notices and remarks by the ALJ, the court held that there "clearly was a voluntary waiver of counsel."  <u>Id.</u>

Plaintiff in the instant case, however, contends that the ALJ did not ensure that plaintiff actually understood his rights.  Nevertheless, this court emphasizes that there was no suggestion in the record that plaintiff was not qualified to understand the information and

17

make a decision concerning representation.  Plaintiff has a high-school equivalency education

and is literate.  (Tr. 60, 338).  There is also no information in the record suggesting that plaintiff

has mental limitations that would prevent him from understanding his right to representation.

See Boyd v. Barnhart, 2004 WL 1088350, at *147 (3d. Cir. May 13, 2004)(holding that plaintiff

knowingly waived right to representation where several notices were given in advance, ALJ

addressed representation at hearing, and there was no indication that plaintiff was not qualified to

make a decision).   As support for his claim that plaintiff did not understand his rights to

representation, plaintiff cites to a portion of the hearing testimony where plaintiff states that he

did not see a lawyer because he did not think it was worth paying money for.  This, alone, does

not persuade the court that plaintiff did not understand his options for legal representation.  In

fact, plaintiff did not say that he could not afford a lawyer; rather, that it was not worth it to him

to pay for one.  As the ALJ had already decided that plaintiff could make an informed decision as

to representation, the ALJ was not then obliged to discuss free legal services.

      Plaintiff further contends that, pursuant to HALLEX I-2-6-52[1], the ALJ

erred by not offering to postpone the hearing so that plaintiff could obtain representation.

Plaintiff overlooks, however, that the ALJ's introductory remarks are within the discretion of the

ALJ, and that the ALJ simply must ensure that the plaintiff can make an informed decision about

representation.  HALLEX does not require the ALJ to offer a postponement to a plaintiff who

unequivocally states that he wishes to proceed without representation.

      In light of the above, we find that plaintiff knowingly and voluntarily

---

[1]HALLEX is the Hearings, Appeals, and Litigation Law Manual which defines
procedures and offers guidance to Social Security Administrative Law Judges on processing and
adjudicating claims.

waived his right to representation at his hearing.  Thus, we must deny plaintiff's request for review as to this issue.

B.        Duty to Develop the Record

Plaintiff next argues that the ALJ failed to discharge his duty to fully develop the record, in light of the fact that plaintiff was unrepresented at the hearing.  In more detail, plaintiff contends that because plaintiff was *pro se*, the ALJ was required to scrupulously inquire into all relevant facts, and that the ALJ's effort to do so was insufficient.  Plaintiff alleges that the ALJ failed to "fully explore his functional limitations," in that the ALJ did not ask plaintiff even basic questions concerning his physical limitations.  Plaintiff also alleges that the ALJ failed to ask plaintiff whether his physicians have placed limitations on his movements or activities.  Plaintiff further argues that the ALJ should have sought a medical source statement from plaintiff's physician regarding plaintiff's work-related functional limitations.   After a review of the ALJ's decision and the evidence of record, including the hearing testimony, we find that the ALJ was remiss in developing the record as to plaintiff's specific functional limitations for the period beginning December 7, 2005.  Accordingly, we grant plaintiff's request for review on this issue.

According to Third Circuit jurisprudence, "ALJs have a duty to develop a full and fair record in social security cases."  Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995).  Moreover, when a claimant appears *pro se* at a hearing, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003)(citations omitted).  The Third Circuit has noted, however, that in developing a full and fair record, there is no particular procedure which an ALJ must follow.

19

Id.

In assessing whether the ALJ here adequately investigated plaintiff's claims of disability, and, more specifically, plaintiff's functional and physical limitations, we cannot ignore that the record contains a significant amount of evidence: findings and notes of two treating physicians, namely Dr. Gever and Dr. Gohen, medical reports from Westchester Hospital documenting plaintiff's inpatient treatment, an evaluation of plaintiff's residual functional capacity by a state agency physician, an evaluation of plaintiff's psychiatric condition by a state agency physician, forms filled out by plaintiff documenting his symptoms and some limitations, and plaintiff's hearing testimony.  In reviewing the evidence of record, without further inquiry, we cannot agree with the ALJ's determination of plaintiff's residual functional capacity for the period beginning December 7, 2005.

In his decision, the ALJ explains that the medical record belies plaintiff's claims of total incapacitation for the relevant period.  The ALJ also references lab studies with mainly normal results, exams with slightly reduced range of motion, plaintiff's episodic treatment by his primary care physician and chiropractor, and plaintiff's activities of daily living.  Nevertheless, other than citing the state agency physician's opinion as to plaintiff's residual functional capacity, the ALJ does not adequately address why he finds plaintiff capable of lifting/carrying 50 pounds occasionally; lifting/carrying 20 pounds frequently;  standing/walking for 6 hours in an 8-hour workday; and sitting for 6 hours in an 8-hour workday.   In light of much of the medical evidence for the period December 7, 2005, and thereafter, as well as plaintiff's hearing testimony, this court finds that the ALJ did not properly inquire into plaintiff's physical limitations.

At the hearing in February 2007, the ALJ generally inquired into plaintiff's daily activities.  The ALJ asked plaintiff if he exercises, or walks, or does anything of that nature.  (Tr. 339-40).  Plaintiff replied that he exercises.  (Tr. 340).  The ALJ also asked plaintiff if he gardens or does yard work.  (Tr. 340).  Plaintiff replied, "What my body will let me do."  (Tr. 340).  When asked if he does housework, plaintiff again replied, "What my body will let me do."  (Tr. 340).  When asked if he grocery shops, plaintiff replied, "Yes."  (Tr. 340).  The ALJ did not then ask plaintiff what his body typically allows, for how long he can sustain those activities, or what physical issues or limitations, in particular, he has with those activities.  For instance, when plaintiff replied that he exercises, the record is unclear as to whether plaintiff can walk or run several miles without the interference of pain, or whether the plaintiff considers to be "exercise" simply the stretching and strengthening moves recommended by Dr. Gohen.  Moreover, while the ALJ characterized plaintiff's activities as "basically unrestricted," plaintiff's hearing testimony would suggest that he does not do these activities without limitations.  The ALJ, therefore, failed to elicit more specific information concerning plaintiff's functional limitations.

Similarly, medical notes by plaintiff's treating doctors indicate that plaintiff might have limitations that contradict the residual functional capacity determined by the ALJ.  This court must note that it is not disputing that plaintiff's condition has improved over time and with treatment.  The evidence of record so indicates.  Nevertheless, without inquiring more thoroughly into plaintiff's physical limitations, the ALJ's residual functional capacity for the period of December 7, 2005, and beyond does not appear to account for many of plaintiff's physical challenges.  In December 2005, following four months of treatment, Dr. Gohen noted that plaintiff had a significant reduction in pain, but that pain in the rib cage "can be exacerbated

with twisting, light lifting, and other everyday activities."  (Tr. 262).  Dr. Gohen also indicated at

that time that plaintiff limits and guards his activities to a large degree. (Tr. 262).

Dr. Gohen's progress notes from several visits in May 2006 additionally

refer to factors which may aggravate plaintiff's back and rib pain.  Dr. Gohen noted increased

pain of the lower thoracolumbar spine with flexion and rotation.  (Tr. 257).  Dr. Gohen also

reported that plaintiff's "back and rib pain is exacerbated with normal activities of everyday

living including taking out the trash, mowing the lawn and other household chores."  (Tr. 257).

Moreover, Dr. Gohen noted that plaintiff is expected to have "periodic exacerbations" of the

injury to back, ribs, and right shoulder.  (Tr. 256).  Dr. Gohen additionally reported that

plaintiff's back pain was aggravated when he tried to lift and carry a trash barrel.  (Tr. 253).

In June 2006, Dr. Gohen's progress notes indicate that plaintiff "felt much

better after treatment," but that plaintiff feels an increase in rib pain with twisting and any lifting.

(Tr. 253).  Dr. Gohen also noted that plaintiff's range of motion has improved, but that plaintiff

"continues to have pain exacerbation to a lesser degree with flexion, right lateral flexion and left

rotation."  (Tr. 253).  Additionally, Dr. Gohen reported that plaintiff must guard all activities and

spread them over several days.  (Tr. 253).  Dr. Gohen specifically noted that when plaintiff

attempted to lift a 30 pound trash bin, plaintiff experienced strong discomfort in the spine and rib

cage.  (Tr. 253).    In consideration of Dr. Gohen's notes, this court questions how plaintiff can

be expected to lift 50 pounds occasionally, and 20 pounds frequently, according to the residual

functional capacity determined by the ALJ, when lifting 30 pounds aggravates his spine and ribs.

This court also questions how, in light of Dr. Gohen's notes, the ALJ did not inquire into

plaintiff's postural limitations.

22

Medical records from Dr. Gohen reveal that even with a course of treatment, certain movements and activities aggravate plaintiff's spine and rib conditions. The ALJ does not address the few postural limitations described in Dr. Gohen's records, nor does the ALJ attempt to reconcile them with the opinion of the state agency physician as to plaintiff's residual functional capacity. Accordingly, in order to fully develop the record, the ALJ should have asked plaintiff whether any movements or activities exacerbate his pain. Simply asking plaintiff whether he participates in certain activities, without inquiring into the extent of the activities and the effect on his body, is not sufficient. Alternatively, the ALJ could have contacted Dr. Gohen after the hearing but before issuing his opinion for Dr. Gohen's opinion as to specific limitations in plaintiff's movements and activities. For these reasons, we remand this case for further development of the record and consideration of plaintiff's residual functional capacity.

C.        Burden of Demonstrating Medical Improvement Sufficient to Terminate Benefits

Lastly, plaintiff argues that the ALJ failed to meet his burden that plaintiff's condition improved sufficiently to allow him to return to full time work. Plaintiff specifically argues that the medical records before and after December 7, 2005, do not reveal significant differences in plaintiff's condition to account for the ALJ's conclusion that plaintiff could perform a full range of medium level work as of December 7, 2005.

The appropriate legal standard under which to review a termination of benefits argument was enunciated in Kuzmin v. Schweiker, 714 F.2d 1233 (3d Cir. 1983). There, the Third Circuit held that once the claimant has introduced evidence that his condition remains the same as it was for the period already determined to be under disability, the burden

then shifts to the Secretary to prove "that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity." Id. at 1237.  This "medical improvement" standard was upheld in Chrupcala v. Heckler, 829 F.2d 1269, 1274 (3d Cir. 1987), where the court stated that "[f]airness would certainly seem to require an adequate showing of medical improvement whenever an ALJ determines that disability should be limited to a specific period."

The evidence in this case includes ample medical records from Dr. Gohen and Dr. Gever for the periods before and after December 7, 2005.  The evidence also includes the opinion of Dr. Ryczak, concerning the period December 24, 2005, and thereafter, as well as plaintiff's hearing testimony.   Notwithstanding the evidence of record, we will not determine at this time whether there was substantial evidence for the ALJ's decision that medical improvement occurred sufficient to allow plaintiff to perform a full range of medium level work.  Plaintiff's residual functional capacity was a part of the ALJ's determination that plaintiff was not disabled beginning December 7, 2005.  Because this court is remanding this case to further develop the record as to plaintiff's residual functional capacity, we cannot review the ALJ's decision to terminate benefits upon a finding that plaintiff can perform a full range of medium level work.

<u>RECOMMENDATION</u>

AND NOW, this _____ day of May, 2009, it is RESPECTFULLY

RECOMMENDED that Plaintiff's Request for Review be GRANTED IN PART and DENIED

IN PART, and the matter remanded for further consideration in accordance with this Report and

Recommendation.


BY THE COURT:



____/s/ LINDA K. CARACAPPA_____
LINDA K. CARACAPPA
UNITED STATES MAGISTRATE JUDGE